UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

UNITED STATES OF AMERICA

v.                                                              Case No. 3:14-CR-91 JD

DARIUS WILLIAMS

**OPINION AND ORDER**

Defendant Darius Williams pled guilty to possession with intent to distribute heroin and, on May 28, 2015, was sentenced a 144-month term of imprisonment. [DE 59; DE 85]. He is currently serving his sentence in Oxford FCI with a release date of March 13, 2025. On April 9, 2021, Mr. Williams filed a letter with the court seeking compassionate release or a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). [DE 217]. Mr. Williams specifically requests his sentence be reduced to ten years. [DE 227 at 2]. The Court referred his motion to the Federal Community Defenders Office, which determined that it is unable to assist Mr. Williams. [DE 219; 220]. Therefore, the Court will consider Mr. Williams' own submissions. The government filed medical records and a response in opposition arguing that Mr. Williams has not presented extraordinary and compelling reasons warranting compassionate release, and the § 3553(a) factors do not favor release. [DE 223]. Mr. Williams filed a letter and a reply to the government's response. [DE 227; 228].

A court generally cannot modify a sentence once the sentence has been imposed. 18 U.S.C. § 3582(c). However, an exception to that general rule allows a court to modify a sentence, after considering the factors under § 3553(a), if "extraordinary and compelling reasons warrant such a reduction," the reduction is consistent with policy statements issued by the Sentencing Commissions, and the defendant has submitted such a request to the warden at least 30 days

before filing a motion or has fully exhausted all administrative rights within the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). The application notes to the Sentencing Guidelines offer some examples of when extraordinary and compelling reasons may be present. Those include when the defendant is suffering from a terminal illness or is suffering from a serious physical or medical condition that substantially diminishes his ability to provide self-care within the prison. U.S.S.G. § 1B1.13 n.1. *See United States v. Gunn*, 980 F.3d 1178, 1181 (7th Cir. 2020) (finding the substantive aspects of U.S.S.G. § 1B1.13 and its Application Notes provide a "working definition" of "extraordinary and compelling reasons" that can guide a court's discretion "without being conclusive"). Because Mr. Williams submitted a request to the Warden at least 30 days before filing his motion with the Court, pursuant to § 3582(c)(1)(A), which the Warden denied [DE 217-1], the Court reviews the merits of the motion.

      First, the Court does not find that extraordinary and compelling reasons warrant compassionate release or a reduction in sentence here. In the context of the COVID-19 pandemic, "§ 3582(c)(1)(A) contemplates a sentence reduction for specific individuals based on the individuals' particular circumstances of where he is housed and his personal health conditions." *United States v. Council*, 2020 WL 3097461, at *5 (N.D. Ind. June 11, 2020); *see also United States v. Melgarejo*, 2020 WL 2395982, at *3 (C.D. Ill. May 12, 2020). In determining whether there is an extraordinary and compelling reason to modify a term of imprisonment, the Court may consider (1) the specificity of the defendant's COVID-19 concerns, (2) whether the defendant has a medical condition that makes him especially susceptible to the dangers of COVID-19, (3) the age of the defendant, and (4) the extent that the defendant's release would mitigate or aggravate the COVID-19 pandemic. *See Council*, 2020 WL 3097461, at *5–7; *United States v. Barrett*, 2020 WL 3264112, at *3 (N.D. Ind. June 17, 2020); *see also*

*United States v. Davis*, 2020 WL 1951652, at *1–2 (N.D. Ind. Apr. 23, 2020) (applying similar factors to consider whether there was a "compelling reason" for pretrial release due to the COVID-19 pandemic).

As support for his motion, Mr. Williams asserts that he has already contracted the virus, suffers from "long haul" COVID-19 symptoms, and has asthma. [DE 217]. Mr. Williams is 37 years old. The Centers for Disease Control ("CDC") reports that the risk of severe illness from COVID-19 increases with age, and that while the greatest risk of severe illness is among those aged 85 or older, adults aged 65 and older have increased risk.[1] Mr. Williams is far from this age range. The CDC has also included moderate to severe asthma among conditions that "can make you more likely" to get severely ill from COVID-19.[2] However, nothing in Mr. Williams' medical records submitted by the government indicates that he is suffering from asthma. In September 2020, Mr. Williams tested positive for COVID-19. He claims he was denied medical attention during his illness and that he still has lingering health effects or "long haul" COVID-19 symptoms.[3] Although he bears the burden of proving his claims, Mr. Williams has not provided any medical records supporting his assertions. The medical records submitted by the government indicate that between September 22 and October 8, Mr. Williams was checked on by medical

---

[1] *See People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html, (last updated Aug. 20, 2021); *COVID-19 Risks and Vaccine Information for Older Adults*, Centers for Disease Control and Prevention, https://www.cdc.gov/aging/covid19/covid19-older-adults.html, (last visited Sept. 29, 2021).
[2] *See People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html, (last updated Aug. 20, 2021)
[3] "Although most people with COVID-19 get better within weeks of illness, some people experience post-COVID conditions. Post-COVID conditions are a wide range of new, returning, or ongoing health problems people can experience four or more weeks after first being infected with the virus that causes COVID-19." *Long-Term Effects*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/long-term-effects/index.html (last updated Sept. 16, 2021).

personnel multiple times and was repeatedly found to have no signs or symptoms from COVID-19. [DE 223-1 at 1–2]. However, should Mr. Williams desire to challenge the adequacy of his medical care he may do so by filing a claim under 42 U.S.C. § 1983. Mr. Williams has not demonstrated that his long haul COVID-19 symptoms are extraordinary or compelling circumstances, nor has he established that they substantially diminish his ability to provide self-care within the prison. Further, the CDC reports that "[c]ases of reinfection with COVID-19 have been reported, but remain rare."[4] There is no other indication that Mr. Williams is at an increased risk of severe illness if reinfected with COVID-19.

The BOP's records have FCI Oxford currently reporting zero inmates and staff members testing positive for COVID-19.[5] The facility reports no deaths at the facility due to the virus. Though Mr. Williams criticizes the way his facility has handled the virus, the BOP has implemented several precautions to help mitigate the spread. Of course, these precautions cannot guarantee that the number of positive inmates will not increase in the prison, and some prisons have experienced outbreaks despite those precautions, particularly as cases increased throughout the country. Over the course of the COVID-19 pandemic, there have been 586 inmates and 80 staff members who have tested positive for the virus at Oxford.[6] Fortunately, the number of current cases is nonexistent, likely due to the BOP's vaccine distribution efforts.

The BOP has reported that it is in the process of distributing and administering the COVID-19 vaccine to staff and inmates under the guidance of the CDC. As of September 29, 2021, the BOP has administered 226,506 doses of the vaccine.[7] More specifically, as of

---

[4] *See Reinfection with COVID-19*, Centers for Disease Control and Prevention, (last updated Aug. 6, 2021, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html.
[5] *See Covid-19 Coronavirus*, Federal Bureau of Prison, https://www.bop.gov/coronavirus/, (last updated Sept. 29, 2021).
[6] *Id.*
[7] *Id.*

September 29, Oxford has 575 inmates and 77 staff members fully inoculated.[8] This means fifty-nine percent of the inmate population at Oxford is fully vaccinated, greatly reducing the likelihood of another spike in COVID-19 cases in the facility.[9] Mr. Williams was offered the COVID-19 vaccine on March 31, 2021 and declined to receive it. [DE 223-2 at 12]. No reason for his refusal has been provided to the Court.

Most courts have held vaccine refusal against defendants moving for compassionate release. *See United States v. Greenlaw*, 2021 WL 1277958, at *6 (D. Me. Apr. 6, 2021) (collecting cases). While it is of course Mr. Williams' right to refuse medical treatment, he cannot simultaneously claim that he must be released because of the risk of complications from a virus while refusing a vaccine that could virtually eliminate that risk. *See, e.g.*, *United States v. Toney*, 2021 WL 1976804, at *1 (N.D. Ind. May 18, 2021); *United States v. Lohmeier*, 2021 WL 365773, at *2 (N.D. Ill. Feb. 3, 2021) ("In declining vaccination (twice), [defendant] declined the opportunity to reduce his risk exposure to COVID-19 dramatically; he cannot reasonably expect that prolonging his risk by declining vaccination will be rewarded with a sentence reduction."). Recently, the Seventh Circuit has also weighed in on this issue. In *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021), the Court held that prisoners who have been vaccinated or who have been offered but declined a vaccine may not rely on the risk of contracting COVID-19 as an "extraordinary and compelling reason" justifying release. The Court also notes, that while Mr. Williams may not be vaccinated, the risk of the virus spreading through his facility and infecting him again has likely declined given the high percentage of fully immunized inmates in his

---

[8] *Id.*
[9] Oxford currently houses 974 total inmates. *FCI Oxford*, Federal Bureau of Prison, https://www.bop.gov/locations/institutions/oxf/, (last visited Sept. 27, 2021).

facility.[10] This, too, weighs heavily against release. Thus, given all of these circumstances, the Court cannot find that extraordinary and compelling reasons warrant compassionate release or a sentence reduction. Section 3582(c) provides the only mechanism for modifying Mr. Williams' sentence since the Court cannot control the BOP's placement decisions, and because he is not entitled to relief under that provision, the Court cannot grant that request.

In his reply, Mr. Williams argues his sentence should be reduced because the government did not uphold its end of the bargain of the plea agreement and because of this, he suffered an "erroneous increase in his sentencing guideline calculation due to an increased drug amount." [DE 228 at 2]. Pursuant to his plea agreement, Mr. Williams pled guilty to a single count of possessing heroin with the intent to distribute it. In return for that plea, the government agreed to a binding sentence of 144 months, which represented a downward variance of about three levels from the ultimate sentencing range under the Guidelines and if the Court had not agreed with the disposition, then his plea agreement would be null and void. In addition, the government not only agreed to dismiss the remaining counts of the indictment, but it also agreed not to bring additional firearm charges or drug trafficking charges with respect to the time period covered by the indictment. [DE 48 at 4–5]. Thus, Mr. Williams' plea agreement not only guaranteed him a sentence that turned out to be well below the guideline range for his one count of conviction, but it also prevented the government from proceeding on other charges that could have resulted in additional penalties. Mr. Williams' counsel objected to the drug amount asserted in the presentence report and the Court overruled the objection at sentencing. [DE 85]. The Court accepted the binding recommendation of 144 months. *Id.* In his plea agreement, Mr. Williams waived his right to appeal or to contest his conviction and all components of his sentence or the

---

[10] *See Benefits of Getting a COVID-19 Vaccine,* Centers for Disease Control and Prevention, (last updated Aug. 16, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html.

manner in which his conviction or sentence was determined or imposed. [DE 48 at 3]. Further, the Court denied Mr. Williams' §2255 motion and application for a certificate of appealability. [DE 135]. Mr. Williams appealed that denial and the Seventh Circuit agreed with the Court and denied his request for a certificate of appealability. [DE 170]. Accordingly, Mr. Williams has not established a reduction of sentence is warranted based on his guidelines calculation under any provision of § 3582(c). These facts do not warrant a reduction under § 3582(c)(1)(B), which permits a court to modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure. Nor has Mr. Williams been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission. 18 U.S.C. § 3582(c)(2). Additionally, Mr. Williams argues that his sentence should be reduced so that he can care for relatives who are incapacitated. Mr. Williams filed these individuals' medical records with his reply. However, while the Court understands Mr. Williams desire to help his ailing relatives, it does not find that those circumstances rise to the level of extraordinary or compelling circumstances warranting a reduction in his sentence.

Second, even if the above facts qualified as extraordinary and compelling reasons, the Court would still deny the motion based on its consideration of the § 3553(a) factors. In support of his motion, Mr. Williams asserts that he has a re-entry plan if released, gainful employment lined up, and some family support. [DE 227 at 2]. He indicates that he has attended and completed every class or program offered at every institution he has been housed at, has maintained a unit orderly job for the last four years, and has taken up reading as a new hobby. He states that he has not had any trouble or conflict, nor has he had any major incident reports during his incarceration. The government states that he has served two thirds of his sentence. *Id.*

7

at 1. Mr. Williams is to be commended for all of these accomplishments and plans for the future, which reflect well on his desire to improve his life upon his release.

As positive as these factors are, however, there are several serious § 3553(a) factors that weigh against Mr. Williams' release. *See United States v. Ugbah*, 4 F.4th 595, 596 (7th Cir. 2021) (finding it is sufficient for a court to provide one reason adequate to support the denial of a motion under Section 3582(c)(1)). The nature and circumstances of his instant offense was serious, involving Mr. Williams distributing a significant amount of heroin on a consistent and ongoing basis since 2013 through November 2014. On November 11, 2014, Mr. Williams fled from the police and when he was caught, he was in possession of $33,500 and a loaded firearm. Also, the presentencing report details an incident that Mr. Williams and others threatened and assaulted a man who stole drug proceeds, heroin, and a firearm from him. Mr. Williams has an extensive and concerning criminal history, which includes several years of either being incarcerated or on court ordered supervision, yet Mr. Williams continued to commit serious drug related crimes. Mr. Williams has a poor record of compliance with terms of supervision, including committing the instant offense while on parole. Under those circumstances, the Court does not find that the § 3553(a) factors support Mr. Williams' compassionate release or a reduction in sentence.

For those reasons, the Court DENIES Mr. Williams' motion for compassionate release or reduction in sentence. [DE 217].

SO ORDERED.

ENTERED: October 1, 2021

        /s/ JON E. DEGUILIO
Chief Judge
United States District Court

8